Case 23-1666, Jodi Tapply et al. v. Whirlpool Corporation, argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellants when ready. May it please the court. Jennifer Bennett on behalf of the appellants. I'm going to try to reserve five minutes for rebuttal if possible. I'd like to start just briefly with standing. As this court recently held in Spearley, overpaying for a defective product is an injury sufficient to support Article III standing. Now, as I understand it, Whirlpool is no longer contesting this basic legal proposition. Instead, their only standing argument is that it's not plausible that the plaintiffs paid more for their ranges than they would have had they known that the ranges would turn on inadvertently without warning when they aren't in use. But there's nothing implausible about the allegation that a consumer is going to pay less for a range that unexpectedly turns on, filling their house with noxious gas, and possibly blowing it up, than they'd pay for a range that doesn't do that. So unless there are questions about standing, I'll go ahead and turn to the merits. And I'll start with knowledge, because that's common to most of the claims. I'll note not the Michigan Consumer Protection Act claim. Now, Whirlpool makes two arguments about why it's not plausibly alleged that it knew of this defect. The first argument it makes, and this is the only argument it made before the district court, is that knowing that its ranges turn on without warning is not enough to have it that it knew that there was a safety risk with these ranges. But everybody knows that gas leaks are safety risks. And so it's perfectly plausible that if a manufacturer knows that its ranges are turning on inadvertently and leaking gas into people's houses, that that's a risk. And if somehow Whirlpool, a range manufacturer, did not know that gas leaks are safety risks, the government was sending it complaints to the Consumer Product Safety Commission. Yeah, I'm sorry. Man, maybe this is where you were going. But I thought that their claim was that they didn't know that the ranges were, that you could turn it on by bumping it. I thought that was the claim. Yes. Not that they didn't know that gas leaks in your home are bad. Sure. So the only, I will say, the only argument they made before the district court and the ruling of the district court was the safety risk argument. What they, if you look at their briefing before the district court, what they said is, nobody who's complained about this has themselves been injured yet. And so we don't know it's a safety risk. They've made a new argument on appeal, which is that we don't know at all that there's this defect. And they're relying on this court's decision in Smith. I think there are several important differences between Smith and this case that make the knowledge allegation plausible here. And the first is the nature of the defect. So the nature of the defect in Smith is that there was a vehicle defect. And if you drove the vehicle for a long time, eventually the dashboard might crack. And this appears to be an aesthetic problem. But what the plaintiffs in Smith said is actually, this is a safety problem because it could interfere with the operation of the airbags. And the question in Smith was, because some people had complained on internet forums about their cracking dashboards, is that enough to make plausible the allegation that before the manufacturer sold these vehicles, that it knew of a safety risk. Here, the defect is quite different. Here, what you have is a complaint that alleges that uniformly Whirlpool makes knobs that are very easy to turn. They have what's called a low detente force. Essentially, they require very little force to turn. So unlike the defect in Smith, where you have a product that's on the road for a long time before it cracks, here you have something that, because of the way it's designed, it's very unsurprising that there would be an inadvertent actuation if you're selling knobs that don't require much force to turn on at all. Does Whirlpool need to know that this, in fact, has happened by virtue of hearing complaints that this has happened? I'm not sure. I'll try to answer the question. I'm not sure I quite got it. So if I get it wrong. Were there complaints? That would be an easy way to answer my question. Were there complaints that were brought to Whirlpool's attention? Absolutely. So the complaint in this lawsuit alleges at paragraph 80 that there were numerous incident reports sent to the Consumer Product Safety Commission and that those reports were then sent on to Whirlpool. By numerous, you mean eight over three years? No, Your Honor. So the complaint gives examples of those incident reports, but it does not say that those are the only ones. And again, Whirlpool didn't raise this before the district court, so we never had a chance to amend if this was going to be a problem, if this court thinks that the number of complaints is a problem. I can represent to you that there are hundreds of these complaints before the Consumer Product Safety Commission, and we could certainly allege that if given the opportunity, if this court is worried about it. Is there an inference that Whirlpool or any company has actually reviewed the various complaints that come in? I don't know how many hundreds, thousands, whatever the number might be. Well, so the complaint alleges that they at least received them. And we know this because, and it says the dates on which the Consumer Product Safety Commission sent them. And this is different than Smith. So in Smith, we had a bunch of complaints on third-party internet forums. So there's no way to tell whether they actually made it to the manufacturer. Here, the incident reports are going to an agency that by law sends them directly to Whirlpool, but only when there's a risk of danger to humans, risk of bodily injury. And so I do think it's a fair inference that where the government is sending a manufacturer incident reports that by law pose a risk of bodily injury, I think it's a fair inference that it's plausible that the manufacturer then knew of them. And the complaint doesn't allege how many incident reports or complaints that the agency would have sent to Whirlpool. So we don't know if eight over the course of three years is a small number vis-a-vis all the complaints, a large number, you know, percentage-wise. We just don't know vis-a-vis the complaint. That's true. It says there are numerous incident reports, but it does not give an exact number. And again, I think that... Or even a range. It doesn't. If this court thinks that's important, we could certainly amend and we'd ask that the court on remand instruct the district court to give us permission to do that. But I'll note here, I want to emphasize here that it's not just the complaints. It's complaints about a defect that is an unsurprising result of what Whirlpool would have known, which is all of these knobs require little force to turn. So frankly, I think given the nature of the defect here, I think the allegation of knowledge is plausible, which is to say, if you sell a knob that requires almost no force to turn, it's unsurprising that it would continuously, you know, accidentally be turned on. So if you have that combined with numerous incident reports from the government saying, hey, there's a safety problem here. Well, it's not incident reports from the government. The CPSC is not investigating this independently and then, you know, saying, oh, these are serious concerns. You should take this seriously. They're just passing along what's reported on their website. And if it, you know, codes for fire, they're just forwarding it. That's true, Your Honor. But again, it is under, that's absolutely right. And I didn't mean to imply otherwise. But again, it's under a regulation that says we will pass them on once if we have specific information about the name of the consumer, if they've verified that this actually happened to them, and if we have, we think there's a risk of bodily harm. So you're right. It is not a government investigation, but it is a government forwarding on reports that it has reviewed and said, hey, we think there's a risk of bodily harm here. It somehow screened them. Exactly. So the knowledge, as I understand it, takes care of all of Whirlpool's arguments about the Consumer Protection Act claims, except for Michigan, which again, doesn't require knowledge. But knowledge is the only argument Whirlpool makes on that. Just to round out the Consumer Protection Act claims on Michigan, what Michigan requires for the Michigan Consumer Protection Act is that it's a failure to disclose a material fact which could not be reasonably known to the consumer. And what Whirlpool is contesting, I think, is that this could not be reasonably known to the consumer. It's a stereotypical jury question. I'll note that the Michigan Court of Appeal in Brownlow rejected basically the argument that Whirlpool is making here. So Whirlpool's argument is, look, these complaints were on the internet. Consumers could have poured through the internet and maybe found them, and maybe that would give them some indication of the defect. But courts have routinely, repeatedly rejected this argument, again, including the Michigan Court of Appeal in Brownlow, which said, in that case, the plaintiff had testified at her deposition, had said, you could have found this out by Googling. And what the Michigan Court of Appeal said is that makes it a dispute of fact for the jury. So I have a question. The Michigan Act requires, it finds a manufacturer liable if they fail to disclose a known fact, but you say it doesn't require knowledge. I don't know how you can fail to disclose something you don't know. That doesn't make sense to me. Maybe I am not understanding. So it fails to, so that's a fair, it just fails to reveal a material fact. So you could have an innovative- Okay, but you still can't reveal a material fact you don't know. So it must require knowledge. I just don't understand. Well, I will tell you that Brownlow, the Michigan Court of Appeal has said not, and there's, you know, in many states, there's a doctrine of essentially innocent misrepresentation, which is you have a duty as the manufacturer-  I'm sorry? This is not a misrepresentation. It's an omission. Also that, which is to say, you know, under Consumer Protection Act statutes that essentially put the duty on somebody selling something to reveal all of the material facts. And they don't require a C enter. But even if you thought that Michigan, you know, Brownlow, the Michigan Court of Appeal got it wrong. You know, I think there's knowledge here for all of the reasons we were just discussing. And that's basically, it sounds to me like your case is not resting on what they learned from the government, but more they should have known because they made these things. So they should know that they twist easily. I think it's a combination of things. I think both, I think either one would be sufficient. You know, the allegation and the complaint, if you look at paragraphs two and three, the allegations of the complaint is all of these things are designed the same way. And they're designed to have a low force to turn. And I'll note in their motion to dismiss, at the district court, Whirlpool essentially said this. They gave a reason for designing it that way. But they've never disputed that. And they essentially conceded it before the district court. And once you design something that requires very little force to turn, I think it is at least plausible at the motion to dismiss stage that you know that it could accidentally be turned. And that combined, but when you combine that with complaints sent again directly to Whirlpool, which is different than what happened in Smith, where they're on these third-party internet forums, when you combine that with complaints that are sent directly to Whirlpool saying, hey, there's a risk here. I think at least those two things render the knowledge allegation plausible. I see I'm running out of time. So unless there are other questions, I'll save the rest of the time for rebuttal. Thank you. Good afternoon. And may it please the court, Aileen McGrath on behalf of Whirlpool. I would also like to start where my friend started very briefly on the other side withstanding, even though like my friend on the other side, I think that knowledge is the primary issue that this court needs to confront in this case. And I want to clarify, and I agree with what my friend said. We don't dispute that overpayment, if it is properly alleged, can be a viable Article III injury. That was the position we took both before and after this court's decision in Spearley. Our dispute in this case is about whether the plaintiffs here have plausibly alleged that they suffered a benefit of the bargain injury consistent with Article III's limitation, because that is the theory of injury that they have advanced. And as other appellate courts have recognized, plaintiffs cannot show they were deprived of the benefit of the bargain simply by pointing to an alleged risk of future harm. Instead, they have to identify an alleged defect arising from a product feature that was the part of the bargain. And we heard my friend say that the focus in this case is on the knobs that Whirlpool used for its ranges. But the way- I thought all of the named plaintiffs alleged that they had had an accidental turning on of their ranges. That's correct, Your Honor. And our position is not that that is dispositive as to whether they've alleged a benefit of the bargain injury. The question is whether plaintiffs have alleged that at the point of sale, they bargained for something different than what they actually received, which means that they had to allege that consumers had a reasonable expectation at the time that they bought these ranges about how those products would function that was not in fact met. And if you look at their definition of the product defect in this case, how they have pled consumers' expectations about how these ranges would work, it makes clear that they have not alleged any benefit of the bargain injury. At pages 119- So I'm sorry if I sound that I don't understand, but if they're saying they expected to have a range that did not accidentally turn on and their range did accidentally turn on, why are they not getting a range that is less than what they paid for, thinking they were getting a perfect range when they're getting what in their view is a defective range? I think my response there is that they have neither alleged that in their complaint and that they've actually disclaimed that articulation of their standing theory in their reply brief. In their complaint, they allege that the ranges function differently than consumers would expect because consumers allegedly expect a two-part actuation mechanism, a push in and a turn. But then in describing that actuation mechanism in their complaint, they use the very same language that Whirlpool uses in its user manual in which they also cite. Whirlpool says ranges must be actuated using a push in and turn mechanism. At the very first paragraph of their complaint on page 105, they say this case is about the ease with which the ranges knobs can be pushed in and rotated without resistance. But they don't say anything about consumers' expectations about the ease with which the knobs would turn. They instead focus on this two-part actuation mechanism that is not borne out in the allegation. So in other words, you're saying that the complaint says the consumers expected push in and turn. You gave them push in and turn. They don't say in their complaint, push in and turn with difficulty. And that's where you rest. That's correct, Your Honor. They don't make allegations about consumers' expectations about the ease with which those knobs return, which is what we think is fatal to the benefit of the bargain standing theory that they've alleged. Do the ranges, I don't have a gas range, so I'm asking this out of naivete. Do the ranges require push in and turn? Or is it my understanding from reading the briefs and the complaint, et cetera, was that you could just literally bump the dial and the gas would come on? The allegations in the complaint say that the user manual refers to a push in and turn actuation mechanism. The plaintiffs refer to a brush in parts of the complaint. That is true, Your Honor. But then in describing the actuation mechanism, what they mean by a brush, they say a push motion with a twist. They say pushed in and rotated. I don't know that I see any real difference between push in and turn and pushed in and rotated. And those are the words that they use to describe the process. And so our position here, I want to be clear, is specific to the allegations that they've made here. Plaintiffs have not alleged a reasonable expectation as to this particular product feature. And so that is what prevents them from alleging this particular kind of economic injury that runs to the point of sale. But consistent with the colloquy earlier, I agree with my friend on the other side of acknowledge is the heart of the issue before this court. As I said a moment ago, I don't think this court has explored the outer limits of Article III standing in the benefit of the bargain context. But it has considered what plaintiffs need to allege in cases like this one to show that a manufacturer had actual knowledge of a product defect sufficient to state a fraud claim. And Smith v. General Motors, that was the principle that the court led with was the fact that these cases are about whether a manufacturer actually knows and is lying. Why are the complaints that individuals made to the Consumer Product Safety Commission that were then forwarded to your client, why are they not enough to show that there was actual knowledge of whatever this defect is? I think they're not enough for three reasons under Smith, but I'm going to focus on the one that we've been discussing, which is the number of those complaints. And just to clarify, we are talking about eight Consumer Product Safety Commission reports and three consumer complaints over a five-year period. That number ends at August 2021, which is the last plaintiff, the date that the last plaintiff in this case purchased her range. It goes all the way back to the first complaint that the plaintiffs identify. If somebody alleged, I'm making up a ridiculous hypo, if somebody alleged that a pair of pajamas caught fire immediately when somebody was 10 feet away from a flame and that was sent by the Consumer Product Safety Commission to the manufacturer, wouldn't that one complaint be enough? Potentially, I'm not saying, well, I'll say two things. I do think that Smith uses, in defining this requirement, Smith said that plaintiffs need to allege that those complaints are more than a blip on the complaints and repairs radar. And in defining what a blip means, an undefined legal term, the court said they have to be frequent enough that they're not lost in a sea of complaints and repairs requests. So I do think there's a- The seriousness here is the theory that the gas, if somebody brushes against the knob, that gas is turned on and that that is a noxious fume that can hurt people, right? That is the theory, yes. Is part of the theory also that there can be a flame unintentionally so that a little kid walking by can brush against it and have a flame or is it only the gas? I think that is the theory that plaintiffs identify. I think they focus primarily on the gas. I don't, you know, as I think- How about these eight complaints? What did they say? None of these complaints identify any fire, injury, personal injury, property damage, or any other ramifications beyond a subset of those 11 complaints identify the possibility that the actuation could lead to gas being inadvertently released. I agree that that is what several of these complaints say. The point that I am trying to make is that when you look at 11 complaints over a five-year period, we're talking about approximately- They say that you- So I understand that. I fully understand that point. And I thought that's what this case was about. But they now say that you should have known anyway because you manufactured knobs that are easy to turn. So we- I've never heard that argument before in this case, Your Honor. The idea that we somehow had knowledge about this defect independent of the complaints that were submitted. I've always understood this case and that aspect of the knowledge requirement to concern the reports that were- the reports that were allegedly given to Whirlpool and whether those were sufficient. That's what I thought too. But we can hear about that on rebuttal. Maybe- And did you change your theory from the district court? No, we did not. And I want to be very clear that we raised this argument before the district court. And I would point the court to page 26, 492. That is page 10 of our motion to dismiss in the district court where we cited- Smith relied on a district court case, Roe versus Ford Motor Company, for the principle that complaints need to be made frequently enough that a manufacturer is aware there's actually a problem with the product. And we cited that case for that very principle as one of the many reasons that we were arguing below that plaintiffs had failed to allege actual knowledge. The district court in turn, I believe at page 4727 relied on that very same case in rejecting plaintiff's allegations about actual knowledge. So I think this argument was both pressed below and passed upon by the district court. It is true that the district court relied in addition to that on other reasons that she found plaintiff's allegations to be insufficient. But this is certainly a part of the case that has been present from the very beginning. I will also add that plaintiffs have had an opportunity to amend their complaint. We filed a motion to dismiss. Instead of opposing that motion, plaintiffs elected to amend. We moved again and the district court dismissed. And so to the extent that there are requests for further amendment based on new or different arguments, I just don't think that's borne out by the procedural history of this case. And if I could also respond to some of what's been said, and I think Judge Larson focused in and I think previewed some of what my answer would be about the relevance of the CPSC complaints. The CPSC complaints are no different substantively from any other kind of consumer complaint. And I've actually never heard, it's another argument that I believe is presented for the first time in this court. Below, the plaintiffs never argued that there was anything different about the CPSC complaints that reflects a federal regulatory agency's safety determination. And that would be wrong in any event, because if you look at the regulation that's at issue in this case, and I believe it's 16 CFR 1102.10, that makes clear, consistent with Judge Larson's observation, that what the CPSC is doing with these complaints is essentially just funneling them and making sure that they check a list, a mechanical list of boxes about what those complaints concern. So as to the question of whether they involve a safety issue, consumers self-verify as to whether that is true. And the regulation makes sure the only filtering that happens is filtering out complaints that are about things that don't have anything to do with safety at all. Like I overpaid for this product, or it doesn't heat up as quickly as I thought it would. Those sorts of things that don't have anything to do with a potential product defect. So there's nothing that the CPSC has done that reflects its determination that a safety defect exists. And so these complaints- Can anybody submit a complaint? Like, or do you have, is there some way, like you have to actually be an owner of this range? Or could just people just go on and decide, I hate Whirlpool, so I'm going to make some complaints. I believe that the regulation requires consumers to verify that they have experienced an incident. I don't recall personally whether they have to own the product. But again, this is a self-verification that consumers check off without really any mechanism for the agency. But it's not Yelp either. I'm not taking that position, no. But I am taking the position that the CPSC itself does not independently verify or conduct any additional assessment of what these complaints raise. There are, of course, many other avenues that the CPSC could pursue. The CPSC could send these incident reports, these complaints that also reference safety concerns. I thought you were saying that the, I guess, Whirlpool would not review these complaints for safety issues, but the complaints themselves might reflect safety concerns and risk. Is that correct? I think there are three. I think that's not exactly correct. I think we're making three arguments about the relevance of the CPSC complaint. And those track the three requirements that the court set out in Smith. One is that the complaints be engaged with or received by the defendant. That's the language that Smith used. And below, and here too, we argue the plaintiffs didn't allege this because the extent of their allegations around the transmittal of these complaints from CPSC to Whirlpool was a single, unelaborated, conclusory allegation in the complaint that just said that. It alleged transmission. It didn't allege receipt. I'm not here to sort of parse the semantics, but plaintiffs never elaborated. How would plaintiffs know whether they were received or not when they're making their complaint? That's not the point that I am attempting to argue that they had to make. But I do think they had to make more. No, no, no. And I'm sorry if I misspoke, Your Honor. I think the point was that they had a single, unelaborated allegation in their complaint, which the district court found to be conclusory. And the reason that she found it to be conclusory is because none of the explanation that we've heard today or in, for instance, pages 30 to 31 of the plaintiff's brief about how the CPSC transmits those reports and where they go, none of that was articulated in the complaint or even in plaintiff's motion to dismiss briefing below. So that's our primary argument is really sounding more in forfeiture as to the first requirement about alleging engaged with or receipt. And I'm using receipt just because that's the word that Smith used. The second prong is the one that we've been discussing about whether those complaints, even if received, rise to a level that they're more than a blip on the manufacturer's radar, which as we can tell from this discussion, we also dispute. And the third is whether those allegations identify a safety defect. And there too, our arguments arise from what this court said in Smith about the importance that allegations of, and again, I just want to reiterate the point of the complaint in this case is to say that Whirlpool was lying to and defrauding every one of its customers that bought one of these ranges by not disclosing the existence of these consumer complaints. Smith said that in that kind of case, manufacturer has to have, consistent with the pleading requirements that apply to fraud claims, has to have actual knowledge not only of those complaints, but also of the safety defect and identifying a defect where one could infer a risk of safety is not the same as identifying and pleading with particularity a safety defect. And in that respect, the complaints that the plaintiffs have pointed to here are in our view, no different from the complaints in Smith, which identified a defect, referred to the possibility of a safety risk, but did not in fact, go further than that, for example, by identifying any instances in which that risk. And again, here too, plaintiffs define the risk in the complaint as one of fire, personal injury, and property damage. And that risk has never materialized. I think you could have complaints that were transmitted by the CPSC that set forth concerns about a safety risk that were received by the manufacturer that would then give rise to an inference of knowledge on the part of the manufacturer of that safety risk. Would that be a fair statement? If I could, I recognize I'm over time, but I would like to answer fully Judge Cole's question. I think there, the important element would be the frequency blip, whether that actually put language from Smith about whether those reports actually put the manufacturer on, gave it actual knowledge about the existence of a defect that runs across every product that it's selling. And so the distinction... No, go ahead. I'm sorry. The distinction that I would draw, or I guess the additional answer I would give is that if in the hypothetical or the question that you're asking, we're talking about one or two instances that might be attributed to misuse of a product or to a mechanical defect in a particular unit, that is not something that gives a manufacturer actual knowledge that there is a problem with every single one of the ranges that it is selling. And so frequency or perhaps other, I'm not saying that numbers are all that matter, but I think there has to be more to those allegations to suggest that the manufacturer actually knows that every one of those products it is selling suffers from the defect that the plaintiffs have alleged or that the complaints have alleged. It sounds like a lot of that is the sort of information that would come out in discovery later on. Number of complaints that were submitted, how many went to this one issue versus a lot of other issues. I mean, are eight incident reports a small number vis-a-vis the total number received or is it just a little blip of thousands and thousands? What I would say there is that if you look at the cases that we have cited and which I think both parties have cited about the numbers of complaints in these kinds of cases, often even at just the pleading stage, plaintiffs may make allegations about hundreds of complaints having been submitted or received by manufacturers along with other indications of the manufacturer's knowledge even at the pleading stage. And so the courts have differentiated between cases like that where reasonable knowledge is plausible to infer and cases like the ones we cite on page 31 of our brief like the district court's decision in Roe versus Ford Motor Company which involved 14 complaints over a three-year period which we think are, at least in terms of numbers, substantially similar. Thank you. Thank you. Thank you. I will try to start where we just left off and answer some of those points on knowledge. So I think there are a few differences, this blip language that we're talking about, Judge Moore, I think you were getting to this. I think there are two big differences from Smith why this wouldn't just be a blip on the radar that a manufacturer wouldn't notice. So one is these complaints, again, are being sent directly to Whirlpool. The concern in Smith was essentially the plaintiffs had to allege constructive knowledge which is to say they had to allege that because people are complaining on internet forums somewhere, the manufacturer knew that's not what's going on here. What's going on here are complaints being sent to Whirlpool. We usually assume, and it's certainly, it's usually sufficient absent some heightened pleading standard that when something is sent to a defendant, it is fair and plausible to say that they received it, that they knew about it. And I'll note there are, you know, we cited them in our brief but there are several cases that say that this is sufficient. Beatty from the Ninth Circuit talks about, you know, if there's a plausible inference that the manufacturer received it, that's enough for knowledge to go to the jury and that was at summary judgment. Blandris was a case in which there was a single letter to a manufacturer and they said, yes, that's enough. Parrish v. Volkswagen cites, collects a number of cases where there are only two or three complaints. And again, the key here is that it's sent directly to the manufacturer. That's the big difference. The second reason that this wouldn't be a blip on the, on Whirlpool's radar, presumably, or at least where it's plausible to think that, is because of the safety concern here. The allegations here are not, like in Smith, the allegations were the complaints are of a cracked dashboard. And the question in Smith is, would the manufacturer know there's a safety risk? And what Smith said is, well, maybe it's plausible that the manufacturer knew of the crack. We're not going to say that's not plausible, but we're going to say it's, you know, there wasn't enough here to know of the safety risk. And that's because it's not immediately obvious, as opposed to here, where, of course, a gas leak is immediately obvious. And if that wasn't enough, the complaints themselves say it. So paragraph 85, complaint sent to Whirlpool. This is a huge safety issue and is totally being ignored. Paragraph 87, I am reporting this for a second time. I am now wondering how many houses you see on the news blow up spontaneously because of unsafe knobs. It also says, I contacted Whirlpool and they're not offering me solutions. Paragraph 88, please look into this ASAP, because this could cause injury, death, or fire. Paragraph 93, the gas knobs turn on when not expected. Dangerous. And I think I understood Whirlpool to argue, and I think they, and they certainly argue this in the brief, that these complaints are not sufficient. The allegations that these are sent to Whirlpool was not sufficient. The complaints go through and you'll see each paragraph in the complaint, they say, this complaint was sent to Whirlpool, this incident report, rather, was sent to Whirlpool and the date. I'm not sure what more the plaintiffs could allege. We can't allege, you know, who at Whirlpool reads the bail, but I think it's enough for a plausible inference that Whirlpool received those complaints. If you disagree, I would ask for leave to avenge. Now Whirlpool has argued that they didn't, that they made this argument below. I'll just read what they said below. The heading of this section that they said below is plaintiffs fail to plausibly allege presale knowledge of a safety defect. They said the reason was that the complaints, the reports to CPSC don't allege personal injury or property damage. And then they say, these complaints establish at most knowledge of an inconvenience and that's not sufficient because that's not enough to establish a risk of property or personal injury. So I would ask, since this wasn't really, this didn't come to the surface below, that if you do find that the volume of complaints is for some reason important here, that you give us the opportunity to amend. The last thing, just very quickly, I will say on standing, I heard that this theory of standing was not alleged in the complaint, that the complaint did not allege that consumers would not expect ranges to be actuated unintentionally. And the complaint describes the defects starting at page 70 and it explicitly alleges this. So paragraph 70 says, consumers reasonably expect that ranges can only be actuated by intentional and deliberate action. Stated another way, consumers would not anticipate that inadvertent contact with a range's burner controls while cooking or performing other activities or by pets or children will actuate the range. And then paragraph 71, unfortunately, and unbeknownst to consumers, because of the defect, each knob actuates through a single smooth motion requiring minimal force and distance. So the theory of the injury here is exactly what's alleged in the complaint, which is consumers would expect that you'd have deliberate action. You'd have this two-step process where you intentionally push and turn. That's a reasonable, that's industry standard. And in fact, what they got was something that requires almost no force, very smooth, and that's dangerous. It is filling their houses with gas and risking setting them on fire. That is an injury for article three standing. It also is sufficient, given that it wasn't disclosed to satisfy the requirements of all of the state laws at issue here. Unless there are any further questions, I'd ask that you reverse. Thank you. Thank you. Both for your argument. The case will be submitted.